```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
RALPH EDWARDS,                                                     :
                                                                   :
                        Plaintiff,                                 :
                                                                   :
                -v-                                                :    14-cv-10058 (KBF)
                                                                   :
CITY OF NEW YORK; C.O. SMITH-WILLIAMS;                             :    OPINION & ORDER
C.O. JOHN DOE 1; C.O. JOHN DOE 2; C.O.                             :
JOHN DOE 3; C.O. JOHN DOE 4,                                       :
                                                                   :
                        Defendants.                                :
                                                                   :
------------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 27, 2015

KATHERINE B. FORREST, District Judge:

Plaintiff Ralph Edwards brought this action pursuant to 42 U.S.C. § 1983 against the City of New York ("City"), C.O. Smith-Williams, and four John Doe correction officers, alleging that he was subjected to excessive force and retaliation between December 18 and December 19, 2011, while in the custody of the New York City Department of Correction ("DOC") at the Bronx County Criminal Court. (Am. Compl., ECF No. 35.)  Plaintiff alleges four causes of action, including two claims against the individual defendants for excessive force and First and Fourteenth Amendment retaliation, and two claims against the City for maintaining a custom of excessive force against detainees and for failure to properly screen, train, supervise, and/or discipline DOC officers.  Plaintiff seeks compensatory and punitive damages, costs, attorneys' fees and any further relief the Court may find appropriate.

Pending before this Court is defendants' motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6).  (ECF No. 44.)  Defendants' motion raises two arguments: (1) plaintiff has failed to plead a viable claim for municipal liability, and (2) the claims against C.O. Smith-Williams should be dismissed as time-barred.  For the reasons set forth below, the motion to dismiss is DENIED.

I.   BACKGROUND

   A.   Factual Allegations[1]

Plaintiff alleges that he was arrested in the Bronx on or about December 17, 2011.  (Am. Compl. ¶ 25.)  Following his arrest, plaintiff was taken to the New York City Police Department's 46th Precinct and then transported to St. Barnabas Hospital, where doctors diagnosed him with severe bronchitis and prescribed various medications.  (Id. ¶¶ 26-28.)  Sometime in the late evening of December 17 or early morning of December 18, plaintiff was transported to the Bronx Criminal Court and placed in a holding cell with other detainees to await arraignment.  (Id. ¶ 29.)  A police officer handed plaintiff's medication to defendant Officer Smith-Williams at the Bronx Criminal Court when plaintiff arrived there.  (Id. ¶ 29.)

Plaintiff's medical condition worsened while he was in the holding cell and he repeatedly called out to ask for the medication that had been prescribed to him hours earlier; no officer responded to plaintiff's pleas for help.  (Id. ¶¶ 30-35.)  Approximately twenty minutes after repeatedly requesting his medication, Smith-Williams approached the door to plaintiff's holding cell and ripped up paperwork that appeared to be related

---

[1] The following facts are taken from the Amended Complaint and documents referenced by and incorporated therein, which the Court accepts as true for purposes of the present motion.  The Court here recounts only those facts relevant to resolving the pending motion to dismiss.

2

to plaintiff's case. (Id. ¶¶ 36-37.) A short time later, Officer John Doe 1, a male DOC officer, placed plaintiff in excessively tight handcuffs and then forcefully dragged plaintiff backwards into a hallway in front of an empty cell, out of sight of the other detainees. (Id. ¶¶ 39-40.) Officer John Doe 1, accompanied by Officers John Doe 2, John Doe 3 and John Doe 4, all wearing full riot gear, then beat plaintiff (who remained handcuffed) using their batons, fists and feet until they seemed to get tired. (Id. ¶¶ 42, 44.) Officer Smith-Williams and a DOC captain or sergeant stood by, overseeing the entire beating. (Id. ¶ 42.)

After the beating ended, plaintiff was dragged by several officers down a flight of stairs and placed in a tiny, windowless cell with no food, water, or medical attention for more than 24 hours. (Id. ¶¶ 46-47.) On December 19, plaintiff was removed from the tiny cell and taken to a courtroom for arraignment. (Id. ¶ 49.) His court-appointed lawyer was taken aback by plaintiff's injuries. (Id. ¶ 49.) After arriving at the Vernon C. Bain Correctional Center following his arraignment, plaintiff's caseworker referred him to a doctor and plaintiff was eventually taken to the emergency room at Bellevue Hospital for treatment of his injuries. (Id. ¶¶ 50-53.)

B.   Procedural Background

Plaintiff initially filed this action pro se on December 17, 2014, naming as defendants the City, four John Doe correction officers and "C.O. Williams-Smith." (Compl., ECF No. 2.) The Complaint identified "CO Williams-Smith" as "a corrections officer employed at Central Booking in the Bronx Criminal Court" who was present when plaintiff was beaten on or about December 18, 2011. (Compl. ¶¶ 5, 10, 14-15.) On January 12, 2015, pursuant to Valentin v. Dinkins, 121 F.3d 72,

75-76 (2d Cir. 1997), this Court requested that defendant "Williams-Smith" waive service of summons and ordered counsel for the City to "ascertain the full name and shield number for defendant Williams-Smith" and "the identities of John Does 1-4" within 60 days. (ECF No. 6.) On March 13, 2015, the City's counsel identified "CO Williams-Smith" as correction officer Smith-Williams, Shield No. 10437, noting that her "names were inverted in the caption" of the complaint. (ECF No. 9.)

On April 24, 2015, plaintiff requested that this Court assign pro bono counsel to assist him in prosecuting this action. (ECF No. 19.) On May 12, 2015, this Court granted that request. (ECF No. 21.) Pro bono counsel entered the case on May 29, 2015, seeking a conference to discuss amendment of the complaint, among other issues. (ECF No. 29.) Smith-Williams was served with a summons and the complaint five days later on June 3, 2015. (ECF No. 33.)

On June 23, 2015, plaintiff filed an amended complaint that included a corrected version of Smith-Williams's name. (Am. Compl., ECF No. 35.) The Amended Complaint asserts two claims against Smith-Williams and the John Doe defendants under 42 U.S.C. § 1983 based on their alleged excessive force and retaliation against plaintiff, and two claims against the City under § 1983 based on its indifference to and widespread tolerance of a pattern and practice of the use of excessive force by DOC officers and the City's failure to properly screen, train, supervise, and/or discipline DOC staff to prevent violations of plaintiff's constitutional rights. (Id. ¶¶ 82-102.) Defendants moved to dismiss the Amended

Complaint on July 7, 2015. (ECF No. 44.) The motion became fully briefed on July 28, 2015. (ECF No. 56.)

II. LEGAL STANDARDS

    A. <u>Motion to Dismiss</u>

To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." <u>Starr v. Sony BMG Music Entm't</u>, 592 F.3d 314, 321 (2d Cir. 2010) (quoting <u>Twombly</u>, 550 U.S. at 570); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (same). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.

The Court does not, however, credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." <u>Id.</u> If the court can infer no more than "the mere possibility of misconduct" from the factual averments—in other words, if the well-pleaded allegations of the complaint have not "nudged claims across the line from conceivable to plausible," dismissal is appropriate. <u>Twombly</u>, 550 U.S. at 570; <u>Starr</u>, 592 F.3d at 321 (quoting <u>Iqbal</u>, 556 U.S. at 679).

On a motion to dismiss, the Court accepts as true the factual allegations in the pleadings and draws all inferences in plaintiffs' favor. <u>See</u> <u>Iqbal</u>, 556 U.S. at

5

678 (citing Twombly, 550 U.S. at 555-57). If a fact is susceptible to two or more competing inferences, in evaluating these motions, the Court must, as a matter of law, draw the inference that favors the plaintiff so long as it is reasonable. N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 121 (2d Cir. 2013). "[T]he existence of other, competing inferences does not prevent the plaintiff's desired inference from qualifying as reasonable unless at least one of those competing inferences rises to the level of an obvious alternative explanation." Id. (quotation marks omitted). Where necessary, the Court may supplement the allegations in the complaint with facts from documents either referenced in the complaint or relied upon in framing the complaint. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

    B.    <u>Municipal Liability</u>

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted). Municipalities and other local government units may be held liable under § 1983. Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 (1978). To make out a colorable claim of municipal liability, a plaintiff must allege: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v.

6

City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (quotation marks and citation omitted); see Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011). "A municipal policy may be pronounced or tacit and reflected in either action or inaction." Cash v. Cnty. of Erie, 654 F.3d 324, 334 (2d Cir. 2011); see Ambrose v. City of New York, 623 F. Supp. 2d 454, 464 (S.D.N.Y. 2009) ("A custom need not be the result of a formal proclamation or law.").

A "custom or usage" may give rise to municipal liability where the "constitutional violations [are] so pervasive that the need for corrective action can fairly be considered 'obvious,' such that the supervising policymaker's failure to take such action gives rise to an inference of her deliberate indifference to inmates' constitutional rights." Bektic-Marrero v. Goldberg, 850 F. Supp. 2d 418, 430-31 (S.D.N.Y. 2012); see Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Jones v. Town of East Haven, 691 F.3d 72, 81 (2d Cir. 2012) (quotation marks and alterations omitted).

A municipality may also be held liable for "a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees." Robinson v. Town of Kent, 835 F. Supp. 2d 1, 8 (S.D.N.Y. 2011); see Simms v. City of New York, 480 F. App'x 627, 629 (2d Cir. 2012) (summary order). To plead a claim against a municipality on a failure to train or supervise theory, the

7

plaintiff must show that: (1) "a policymaker of the municipality knows to a moral certainty that its employees will confront a given situation," (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or . . . there is a history of employees mishandling the situation," and (3) "the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights." Young v. Cnty. of Fulton, 160 F.3d 899, 904 (2d Cir. 1998) (citing Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992)) (alterations and quotation marks omitted); see Bertuglia v. City of New York, 839 F. Supp. 2d 703, 738 (S.D.N.Y. 2012).  Because "[i]t is unlikely that a plaintiff would have information about [a municipality's] training programs or about the cause of the misconduct at the pleading stage," a plaintiff "need only plead that the city's failure to train caused the constitutional violation." Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 130 n.10 (2d Cir. 2004); Ferrari v. Cnty. of Suffolk, 790 F. Supp. 2d 34, 45 (E.D.N.Y. 2011).  With respect to a failure to supervise claim, while a policy may not ordinarily be inferred from a single incident, a "'single, unusually brutal or egregious beating administered by a group of municipal employees' may support an inference that the conduct was attributable to inadequate supervision 'amounting to deliberate indifference.'" Amnesty Am., 361 F.3d at 129 (quoting Turpin v. Mailet, 619 F.2d 196, 202 (2d Cir. 1980)).

    C.    Relation Back under Rule 15(c)

New York's three-year statute of limitations for unspecified personal injury actions applies to claims under § 1983. Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013).  A § 1983 claim accrues "when the plaintiff knows or has reason to know of

8

the injury which is the basis of his action." Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002) (quotation marks omitted). "If a complaint is amended to include an additional defendant after the statute of limitations has run, the amended complaint is not time barred if it 'relates back' to a timely filed complaint." VKK Corp. v. Nat'l Football League, 244 F.3d 114, 128 (2d Cir. 2001). Pursuant to Rule 15(c)(1)(C), an amendment that changes the party or the naming of the party against whom a claim is asserted relates back to the date of the original pleading if that party, within the 120 days provided for serving the summons and complaint, "received such notice of the action that it will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C); see Hogan, 738 F.3d at 517.[2]

The newly named party's actual or constructive notice of the suit satisfies the notice requirement. Scott v. Vill. of Spring Valley, 577 F, App'x 81, 82 (2d Cir. 2014) (summary order). "Under the constructive notice doctrine, the court can impute knowledge of a lawsuit to a new defendant government official through his attorney, when the attorney also represented the officials originally sued, so long as there is some showing that the attorney knew that the additional defendants would be added to the existing suit." Abdell v. City of New York, 759 F. Supp. 2d 450, 455 (S.D.N.Y. 2010) (quotation marks and alterations omitted); see Scott, 577 F, App'x at 82; Gleason v. McBride, 869 F.2d 688, 693 (2d Cir. 1989).

---

[2] Rule 15(c)(1)(C) also requires that the amendment assert a claim that arose out of the conduct, transaction, or occurrence set out in the original pleading. Fed. R. Civ. P. 15(c)(1)(C). Defendants do not dispute that requirement is met here.

As to the knowledge requirement, Rule 15(c)(1)(C) "asks what the prospective defendant knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing her original complaint." Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 548 (2010).  A mistake for purposes of Rule 15 includes an error, such as a misnomer or misidentification.  Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 469 (2d Cir. 1995), as modified 74 F.3d 1366 (2d Cir. 1996) ("[T]he rule is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or misidentification.").

### III. DISCUSSION

#### A. Municipal Claims

The Amended Complaint alleges two causes of action against the City based on a custom of deliberate indifference to a pattern and practice of brutality by DOC officers, and the City's failure to properly train and supervise DOC officers to prevent violations of plaintiff's clearly established rights.  (Am. Compl. ¶¶ 86-89, 95-102.)  Plaintiff alleges that for decades the DOC has been aware of the routine, dangerous, and unconstitutional use of excessive force by staff at individual facilities under the DOC's control.  (Am. Compl. ¶ 70.)

In support of these allegations, the Amended Complaint cites a litany of sources, including an August 2014 report by the United States Attorney for the Southern District of New York, (see Am. Compl. ¶ 75 (quoting report on treatment of adolescent male inmates which found that DOC officers use excessive force and injure inmates at a "staggering" rate within a system that fosters officer impunity)),

10

news articles documenting the use of excessive force by DOC officers, (see id. ¶¶ 72, 76 (quoting a 2014 New York Times report that found "[b]rutal attacks by corrections officers on inmates" to be "common," that "the reluctance of [DOC] to acknowledge the problem and the fact that guards are rarely punished" has contributed to the problem, and which showed that use of force by officers had increased nearly 90% over the five years beginning in 2009); id. ¶ 73 (citing a 2015 New York Times article quoting a DOC statement that "[i]t takes time to undo decades of mismanagement")), and numerous civil lawsuits in which individuals alleged that DOC officers had applied excessive force against them, (see id. ¶ 78 (citing eighteen lawsuits filed between 1999 and 2011 alleging that DOC officers used excessive force against inmates, including five involving the beatings of detainees in courthouse holding pens)). Plaintiff also cites DOC Commissioner Joseph Ponte's June 2014 testimony before the New York City Council, in which Ponte cited statistics reflecting increasing violence in the City's jails dating back to 2010. (Id. ¶ 73.) Even if these sources in isolation might not be sufficient to plausibly allege the existence of a municipal custom, collectively these allegations, taken as true, show the City's acute awareness of the pervasive use of excessive force by DOC officers. When combined, these allegations render plausible plaintiff's claims under either a pattern and practice or failure to train/supervise theory.

As to plaintiff's pattern and practice claim, the allegations, taken as true, plausibly show that the use of excessive force in DOC facilities is so pervasive that the City's failure to take corrective action creates an inference of deliberate

indifference to inmates' constitutional rights. Courts within this district have allowed <u>Monell</u> claims to survive 12(b)(6) motions based on factual allegations no more substantial than those present here. <u>See</u>, e.g., <u>Bektic-Marrero</u>, 850 F. Supp. 2d at 431 (denying motion to dismiss where plaintiff cited a DOJ report finding jail's provision of medical care to inmates to be "constitutionally deficient in several respects"); <u>Cantey v. City of New York</u>, No. 10 Civ. 4043(JPO), 2012 WL 6771342, at *5 (S.D.N.Y. Dec. 11, 2012) (denying motion to dismiss where plaintiff alleged "he was told that the decision to re-incarcerate him for an additional two months was made by 'the Department of Corrections' and he alleged "his transfer was 'pursuant to standard policies and practices of Defendants'"); <u>Battle v. City of New York</u>, No. 11 Civ. 3599(RMB), 2012 WL 112242, at *5 (S.D.N.Y. Jan. 12, 2012) (denying motion to dismiss where plaintiff alleged that NYPD officers understood that "searching and seizing livery car passengers is 'routine,' is authorized under TRIP, and will occur 'more often' in the future").

Defendants challenge the probativeness of the government reports, news articles and prior lawsuits cited by plaintiff on the ground that these sources are irrelevant because they refer to incidents of excessive force that are dissimilar to plaintiff's alleged beating. The Court is unpersuaded. That Commissioner Ponte's statement, the U.S. Attorney's report, news articles and prior lawsuits additionally raise other institutional problems within the DOC does not mean these sources are irrelevant to plaintiff's allegations that there was a custom of the use of excessive force by DOC officers against detainees. Further, although many of the sources

cited by plaintiff post-date his alleged beating, they nonetheless support the inference that the use of excessive force among DOC officers was a persistent and widespread problem well before December 2011.  It is clear from these sources that incidents involving the use of excessive force predate plaintiff's alleged beating.[3]

As to plaintiff's failure to train/supervise claim, the allegations, taken as true, plausibly show there was a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of detainees in DOC custody.  Plaintiff's cited government reports, news articles and eighteen prior lawsuits plausibly demonstrate that policymakers knew to a moral certainty that DOC officers routinely confront situations in which detainees provoke them and that there is a history of DOC officers mishandling such situations by

---

[3] Defendants also challenge the pertinence of plaintiff's allegations that the City was aware of eighteen similar prior lawsuits on the ground that those suits do not evidence actual wrongdoing, citing Morris v. City of New York, No. 12–CV–3959, 2013 WL 5781672, at *11 (E.D.N.Y. Oct. 28, 2013).  It is certainly not always the case that the fact of a series of suits alleging similar claims supports a Monell claim.  If that were so, every excessive force claim would support a corresponding Monell claim.  Here, however, the point is one of notice.  Civil suits filed prior to plaintiff's beating alleging that DOC officers used excessive force are relevant here not because they prove that such excessive force actually occurred, but rather because they support the inference that the City was aware of the possible use of excessive force by officers prior to the incident at issue.  Vann, 72 F.3d at 1049 ("An obvious need [for more or better supervision] may be demonstrated through proof of repeated complaints of civil rights violations."); see also McCants v. City of Newburgh, No. 14 CV 556(VB), 2014 WL 6645987, at *4 (S.D.N.Y. Nov. 21, 2014) (denying motion to dismiss where plaintiff cited seventeen similar prior lawsuits); Bertuglia, 839 F. Supp. 2d at 738 (denying motion to dismiss where plaintiff cited over fifteen cases of alleged prosecutorial misconduct, as well as a state criminal court opinion documenting misconduct in plaintiff's case, and plaintiff alleged that "a far larger number of unreported decisions evidencing this pattern [we]re in its possession").  Furthermore, plaintiff does not solely rely on these prior suits to support his Monell claims—these allegations are buttressed by several government reports and news articles detailing the DOC's awareness that excessive force was a widespread problem.

The cases cited by defendants, Simms, 480 F. App'x 627, and Collins v. City of New York, 923 F. Supp. 2d 462 (E.D.N.Y. 2013), do not meaningfully support their position.  In Simms, the Second Circuit affirmed the dismissal of a claim against a municipality where the plaintiff had cited just one similar prior lawsuit, see 480 F. App'x at 629-30, and in Collins, the court noted that the cases cited by the plaintiff either post-dated his conviction or involved something less than evidence of misconduct, but ultimately denied the defendant's motion to dismiss based on the plaintiff's other allegations, see 923 F. Supp. 2d at 479.

responding with excessive force.[4] Plaintiff's cited materials create a plausible inference that the City has not meaningfully acted to improve training and/or supervision to prevent further incidents, especially as plaintiff alleges that the DOC took no action to discipline the officers who participated in or witnessed his attack. (Am. Compl. ¶ 62.) Finally, it is beyond doubt that a DOC officer's use of excessive force will frequently cause the deprivation of a citizen's constitutional rights. Plaintiff's failure to train/supervise claim thus passes muster at this stage.

Plaintiff's allegations of the existence of a municipal policy or custom may ultimately be difficult to prove. But at this stage, the issue is only whether the factual content alleged by the plaintiffs, accepted as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Because the Amended Complaint meets that standard, defendants' motion to dismiss the claims against the City is denied.

B.  Claims against Smith-Williams

Plaintiff filed his original complaint pro se on December 17, 2014, just within the three-year statute of limitations for claims under § 1983. That complaint named "CO Williams-Smith" as a defendant, inverting the order of proper defendant Smith-Williams's hyphenated name. (Compl.) The Amended Complaint, filed outside the limitations period on June 23, 2015, corrected the order of

---

[4] Even absent the materials documenting a pervasive excessive force problem within the DOC, plaintiff's alleged vicious beating by multiple officers in response to his pleas for medical attention, if accepted as true, was arguably sufficiently brutal and egregious to warrant an inference that it was attributable to inadequate training or supervision amounting to deliberate indifference by officials in charge. See Turpin, 619 F.2d at 202; Hodge v. Ruperto, 739 F. Supp. 873, 878 (S.D.N.Y. 1990) (denying Rule 12(c) motion on failure to supervise claim where plaintiff alleged that "a number of officers deprived him of food and water for two-and-one-half days and confined him in an overcrowded and unsanitary cell").

defendant Smith-Williams's surname. (Am. Compl.) Plaintiff's amendment may relate back to his original filing upon a showing that, by April 16, 2015, Smith-Williams received notice of this action such that she will not be prejudiced in defending on the merits and that she knew or should have known that the action would have been brought against her, but for a mistake concerning her identity. Fed. R. Civ. P. 15(c)(1)(C). Defendants do not contest that Smith-Williams received constructive notice of this action by March 13, 2015, the date that defense counsel filed a letter with this Court stating that his office had "identified the correct name, shield number and proper service address" for Smith-Williams and that her "names were inverted in the caption." (ECF No. 9.) The parties only dispute whether plaintiff's inversion of Smith-Williams's surname constitutes a "mistake" within the meaning of Rule 15(c)(1)(C).

The Court does not find this to be a close question. In inverting Smith-Williams's surname in the original complaint, plaintiff, then proceeding pro se, made the precise type of mistake (a misnomer or misidentification) contemplated by Rule 15(c)(1)(C). See Barrow, 66 F.3d at 469; see also Bishop v. Best Buy, Co., Inc., No. 08 Civ. 8427 (LBS), 2010 WL 4159566, at *2-3 (S.D.N.Y. Oct. 13, 2010) (permitting amendment to change defendant "Best Buy, Co., Inc." and "Best Buy Co. of Minnesota" to "Best Buy, L.P."); Smalls, 2006 WL 2336911, at *3 (allowing plaintiff to amend complaint to name proper "'B' post officer" after plaintiff learned through discovery that a different officer than that named in the original complaint

15

was on duty at the B post on the relevant night).[5] The fact that plaintiff provided no physical description of Smith-Williams or her shield number or duty post is not determinative of this issue. Plaintiff's mistake was a misnomer or misidentification and before expiration of the 120-day period after the original complaint was filed, Smith-Williams's attorney knew of the mistake and indicated he was already beginning to prepare Smith-Williams's defense by interviewing her. Because plaintiff has met the requirements of Rule 15(c)(1)(C), his amendment relates back to the date of the original complaint. As a result, defendants' motion to dismiss the complaint against Smith-Williams as time-barred is denied.

IV. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the Amended Complaint is DENIED.

---

[5] Bove v. New York City, 2000 WL 687720, 213 F.3d 625 (2d Cir. 2000) (summary order), cited by defendants, is inapposite. Although the Second Circuit affirmed the district court's denial of leave for an amendment in which the plaintiff sought to name "Officer Doscher" instead of "Officer Deutsch" as the proper defendant, it did so on the ground that the plaintiff would have discovered that the person he sought to sue was named Doscher if he had done "even minimal investigation" given the information available to him. Id. at *1. Even if Bove remains good law in light of the Supreme Court's admonition in Krupski that the "[i]nformation in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity," 560 U.S. at 548, the reasoning in Bove does not apply here as there is no suggestion that plaintiff had access to information that would have allowed him to easily identify the proper party before the expiration of the limitations period.

The Clerk of Court is directed to close the motion at ECF No. 44.

SO ORDERED.

Dated:    New York, New York
          August 27, 2015

                                              KATHERINE B. FORREST
                                              United States District Judge